IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00298-CR

 

Ronald Lockett,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 03-04519-CRF-361

 



MEMORANDUM  Opinion










 

        Lockett appeals his conviction
for first-degree felony possession of cocaine with intent to deliver.  See Tex. Health & Safety Code Ann.
§ 481.112(a), (d) (Vernon 2003); see also id. § 481.102(3)(D)
(Vernon Supp. 2006).  We affirm.

        In Lockett’s two issues, he
complains concerning the trial court’s evidentiary rulings.  

        In Lockett’s first issue, he
contends that the trial court erred in overruling Lockett’s
Confrontation-Clause objection.  “In all criminal prosecutions, the accused
shall enjoy the right . . . to be confronted with the witnesses
against him . . . .”  U.S.
Const. amend. VI; see Crawford v. Washington, 541 U.S. 36
(2004).  Lockett complains of a law-enforcement officer’s “descri[ption] to the
jury how he gained out of court information from a confidential informant and these
statements were the basis for him obtaining a search warrant for [Lockett]’s
residence.  (RR Vol 3 Pg 20-23).”  (Br. at 5 (emphasis in
orig.).)  We understand the following to be the substance of the testimony of
the officer to which Lockett refers, on direct examination by the State:

       Q.   . . . .  I
want to take you to October 8th, 2003.  Do you remember that day?

       A.    Yes, ma’am.

       Q.   What happened on that day?

       A.    We executed a narcotic’s
search warrant at the address of 1216 April Bloom, Apartment B, in College Station, Brazos County, Texas.

       Q.   And you obtained that
search warrant.  Was that based on information you had received from a
confidential informant?

       A.    Yes, ma’am.

       Q.   Who was the subject of
that warrant?

       A.    LaQuita Nixon.

       Q.   Was she the owner of that
house?

       A.    Yes, ma’am.

       Q.   Okay.  Was the Defendant
subject at all?

       A.    Of that search warrant in
particular, he was not named in that.

       Q.   Okay.  Did you have a
description of the Defendant—such that you knew that he might be at that
residence as well?

       A.    Yes, ma’am.

       Q.   Was there a nickname known
for the Defendant that was not included in the search warrant to keep—

       . . . .

       Q.   . . .  Again,
was there a nickname given to you by the confidential informant that you did
not include in order to keep his identity secret?

       . . . .

       Q.   . . . [W]as
there a—a nickname that was known or given to you by the confidential informant
that you did not include in the search warrant?

       A.    Yes, ma’am.

       Q.   And that was, again, to
protect the C.I.?

       A.    That’s correct.

       . . . .

       Q.   Can you tell the jury what
a hard entry is?

       A.    There is different levels
of—of how we execute a search warrant.  We can go and actually knock on the
door and ask for consent to enter, even though we do have a search warrant.  We
can wait for people to leave the house, make contact with them down the road or
in the yard.

               When we commonly refer
to hard entry, we actually force our way into a house by using some type of
tool, battering ram, something of that nature, to enter the house.

       Q.   Is that also called a
no-knock?

       A.    Yes, ma’am, it can be
considered a no-knock entry also.

       Q.   Did you include
information in your warrant as to your belief that a no-knock entry was
necessary in this case?

       A.    Yes, ma’am.

       Q.   And what information did you
include within the warrant regarding the no-knock entry?

       A.    We received information that he
possibly had a weapon inside the residence, that the person in the search
warrant had shown signs of being, maybe, combative towards law enforcement. 
And the actual Ms. Nixon, who was named in the search warrant, had had prior
narcotics convictions or charges.

[sic] (3 R.R. at 20-22) (ellipses and
bracketed alterations added).

        We assume without deciding
that the trial court erred in overruling Lockett’s objection.[1]

        Any error, however, was
harmless.  Crawford error is constitutional error.  See Davis v. State, 203 S.W.3d 845, 849-50 (Tex. Crim. App. 2006), cert. denied, 75
U.S.L.W. 3554 (U.S. Apr. 16, 2007) (No. 06-9244).  “If the appellate record in
a criminal case reveals constitutional error that is subject to harmless error
review, the court of appeals must reverse a judgment of conviction or
punishment unless the court determines beyond a reasonable doubt that the error
did not contribute to the conviction or punishment.”  Tex. R. App. P. 44.2(a).  Crawford error is subject to
harmless-error review.  Davis at 849-50.  The reviewing court
must ask: “Would the admission of th[e] evidence, in the context of the trial
as a whole, likely have made any significant impact upon the minds of an
average jury?”  Id. at 850 (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).  To decide that question, we consider the following nonexclusive
list of factors:

(1)   The importance of the witness’s testimony in
the prosecution’s case;

(2)   Whether the testimony was cumulative;

(3)   The presence or absence of evidence
corroborating or contradicting the witness’s testimony on material points;

(4)   The extent of cross-examination otherwise
permitted; and

(5)   The overall strength of the prosecution’s
case.

Davis at
850 (citing Van Arsdall at 684).

        The witness testified, at
most, that the confidential informant stated that Lockett might have a weapon. 
The importance of the confidential informant’s statement in the State’s case was
negligible.  The State points to corroboration of the hearsay statement by
evidence that a gun was found in Lockett’s residence.  Lockett does not contend
that he was otherwise restricted in his cross-examination.  Lockett concedes
that he “was obviously in possession of a controlled substance,” so that “the
only defense he could muster at trial was an attack on the reliability and
credibility of the confidential informant.”  (Br. at 13.)  In light of those
factors, any error in the admission of the confidential informant’s statements
was harmless beyond a reasonable doubt.  We overrule Lockett’s first issue.

        In Lockett’s second issue, he
contends that the trial court committed constitutional error in denying
Lockett’s examination of a witness whom Lockett sought to call and whom Lockett
contends was the confidential informant.

        We again assume without
deciding that the trial court erred.

        “[W]hen the trial court
restricts cross-examination or excludes evidence,” then “the reviewing court
first assumes that ‘the damaging potential of the cross-examination’ had
occurred . . . .”  Davis, 203 S.W.3d at 850-51,
850 (quoting Van Arsdall, 475 U.S. at 684).  Assuming that the trial
court had permitted examination of the witness, and that the damaging potential
of that examination to impeach the reliability and credibility of the
confidential informant had been realized, in light of the above factors, any
error was harmless beyond a reasonable doubt.  We overrule Lockett’s second
issue.

        Having
overruled Lockett’s issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

        Justice Vance, and

        Justice Reyna

Affirmed

Opinion delivered and filed June 27, 2007

Do not publish

[CRPM ]









                [1] We note, however, that Lockett does not
point to evidence of statements by the informant that clearly concern Lockett.